**6**

[615 NYS2d 882]

In the Matter of NEW YORK COUNTY DES LITIGATION.

PAMELA CARRANO et al., Respondents, v ABBOTT LABORATORIES et al., Defendants, and BOYLE & Co. PHARMACEUTICALS, Appellant.

ANDREA GOLDSTEIN et al., Respondents, v ABBOTT LABORATORIES et al., Defendants, and BOYLE & Co. PHARMACEUTICALS, Appellant.

ALICE HOOPER et al., Respondents, v ABBOTT LABORATORIES et al., Defendants, and BOYLE & Co. PHARMACEUTICALS, Appellant.

LESLIE LACOUNT et al., Respondents, v ABBOTT LABORATORIES et al., Defendants, and BOYLE & Co. PHARMACEUTICALS, Appellant.

DEBORAH SHAFFER et al., Plaintiffs-Respondents, v ABBOTT LABORATORIES et al., Defendants, and BOYLE & Co. PHARMACEUTICALS, Appellant.

RONNIE STEINBERG et al., Respondents, v ABBOTT LABORATORIES et al., Defendants, and BOYLE & Co. PHARMACEUTICALS, Appellant.

IRIS CHERNOSKY et al., Plaintiffs-Respondents, v ABBOTT LABORATORIES et al., Defendants, and BOYLE & Co. PHARMACEUTICALS, Appellant.

ALBERT GREENE et al., Respondents, v ABBOTT LABORATORIES et al., Defendants, and BOYLE & Co. PHARMACEUTICALS, Appellant.

SUSAN A. HELMRICH et al., Plaintiffs-Respondents, v ABBOTT LABORATORIES et al., Defendants, and BOYLE & Co. PHARMACEUTICALS, Appellant.

SANDRA KLUGE et al., Respondents, v ELI LILLY & COMPANY et al., Defendants, and BOYLE & Co. PHARMACEUTICALS, Appellant.

MARGARET VILASI et al., Respondents, v ELI LILLY & COMPANY et al., Defendants, and BOYLE & Co. PHARMACEUTICALS, Appellant.

First Department, August 18, 1994

## APPEARANCES OF COUNSEL

*Charles M. McCaghey* of counsel *(Susan J. Krembs* on the brief; *Ryan, Ryan, Johnson, Clear & DeLuca,* and *Emmet J. Gantz,* attorneys), for appellant.

*Perry S. Reich* of counsel *(Law Offices of Sybil Shainwald,* attorneys), for respondents.

## OPINION OF THE COURT

Asch, J.

This case involves the question of whether defendant-appellant Boyle & Co. Pharmaceuticals (Boyle) is subject to the personal jurisdiction of the New York courts. It is a given that plaintiffs' mothers ingested DES in New York and that plaintiffs were *in utero* in New York when the exposure to DES took place. It is also accepted that Boyle is a closely held California corporation which manufactured and sold DES in the States west of the Mississippi from 1949 to 1960. It has never maintained an office, held a license or been registered to do business in New York, or even placed an advertisement in New York. Further, it claims that it never directly sold DES in New York or shipped it here, and for the purposes of this appeal, we accept those claims as true.

While the traditional contacts which determine jurisdiction are not present in Boyle, under the unique circumstances presented herein, the "liberal" language of the "long-arm statute", CPLR 302 (a) (3) (ii), can be employed to confer jurisdiction that is consistent with the Due Process Clause of the United States Constitution and even our own State's hesitancy in expanding New York's theoretical jurisdiction to its outermost limits *(see, Talbot v Johnson Newspaper Corp.,* 71 NY2d 827, 829-830). We find that defendant Boyle realistically *does* have "certain minimum contacts with [New York] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice' " *(International Shoe Co. v Washington,* 326 US 310, 316, quoting *Milliken v Meyer,* 311 US 457, 463). We also find that the Court of Appeals would conclude that, in the area of DES product liability, and under the circumstances present here,

the New York long-arm statute *would* provide for in personam jurisdiction *(Talbot v Johnson Newspaper Corp., supra,* at 829-830).

Section 302 (a) (3) (ii) provides that "a court may exercise personal jurisdiction over any nondomiciliary * * * who in person or through an agent * * * (3) commits a tortious act without the state causing injury to person or property within the state * * * if he * * * (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce".

The plaintiffs are proceeding on a "market share" theory of liability because they are unable to link the ingestion of DES (diethylstilbestrol) by their mothers during their pregnancies to any specific manufacturer *(see, Matter of DES Mkt. Share Litig.,* 79 NY2d 299; *Hymowitz v Eli Lilly & Co.,* 73 NY2d 487, *cert denied* 493 US 944). In *Hymowitz,* the Court of Appeals noted that "extant common-law doctrines, unmodified, provide no relief for the DES plaintiff unable to identify the manufacturer of the drug that injured her" but concluded that these circumstances "call for recognition of a realistic avenue of relief for plaintiffs injured by DES" and that "judicial action is again required to overcome the ' "inordinately difficult problems of proof" ' caused by contemporary products and marketing techniques [citations omitted]" *(supra,* at 507). Finding that the DES situation was "a singular case" and an "unusual scenario" *(supra,* at 508), the Court said: "Consequently, for essentially practical reasons, we adopt a market share theory using a national market. We are aware that the adoption of a national market will likely result in a disproportion between the liability of individual manufacturers and the actual injuries each manufacturer caused in this State. Thus, our market share theory cannot be founded upon the belief that, over the run of cases, liability will approximate causation in this State [citation omitted]. Nor does the use of a national market provide a reasonable link between liability and the risk created by a defendant to a particular plaintiff [citations omitted]. Instead, we choose to apportion liability so as to correspond to the over-all culpability of each defendant, measured by the amount of risk of injury each defendant created to the public-at-large. Use of a national market is a fair method, we believe, of apportioning defendants' liabilities according to their total culpability in marketing DES for use during pregnancy. Under the circumstances, this is an equita-

ble way to provide plaintiffs with the relief they deserve, while also rationally distributing the responsibility for plaintiffs' injuries among defendants." *(Supra,* at 511-512.)

As is readily apparent and, indeed, explicitly recognized *(see, supra)* by the Court of Appeals, *Hymowitz* departs from traditional common-law principles to achieve its goal of giving relief to injured DES plaintiffs. In *Matter of DES Mkt. Share Litig. (supra)* the Court later stressed that the new market share rule was "compelled by simple fairness" and reaffirmed that it had "relaxed" the element of proximate cause that would have required the plaintiffs to "identify the manufacturer[s] of the drug ingested by their mothers" *(supra,* at 306-307).

Since the traditional substantive rules were relaxed to allow recovery against a defendant with a national market share of the DES distribution even though there was no proof that the defendant ever sold DES in New York, it would be anomalous to preclude recovery against such defendant on procedural grounds.

In any event, Boyle's involvement in this litigation is not the result of random, fortuitous or attenuated contacts with the national DES market. By its own admission, Boyle had some .3% of the national market. In both *Hymowitz* and *Matter of DES Mkt. Share Litig.,* the focus for substantive liability was not on a nexus with the manufacturer's New York share of the market, but the contemplated focus was with the nexus for the national market for DES.

Boyle was one of 12 manufacturers that filed New Drug Applications with the Food and Drug Administration for permission to market diethylstilbestrol for use in pregnancy. It and a small number of other pharmaceutical companies were instrumental in getting FDA approval to market DES despite the well-known fact that substances given to a pregnant woman would pass through the placenta into the fetus. In fact, as we have previously noted, as early as 1939, it was shown the administration of DES on rats and mice had malforming effects on the fetus *(see, Bichler v Eli Lilly & Co.,* 79 AD2d 317, 323). Thus, Boyle, by its acts, together with other manufacturers, affirmatively interposed itself into the New York market and "should [have] reasonably expect[ed] the act to have consequences in the state" of New York (CPLR 302 [a] [3] [ii]).

In a long and scholarly opinion (exhaustive and authoritative enough to constitute a significant law review article),

dealing with the issue before us, which was relied upon by the IAS Court, Judge Jack B. Weinstein of the Federal District Court held:

"Cases holding that jurisdiction cannot be asserted where a product's contact with New York was only through the stream of national commerce and unintended by the manufacturer are not relevant to the present case. Each involved traditional tort suits by individual plaintiffs against individual providers of goods and services [citations omitted]. *Hymowitz* is not a traditional tort case. It is the New York courts' response to what would otherwise be the intractable nature of the DES mass tort. Local businesses, or foreign businesses whose products normally have no contact with the United States, may arguably rely on the fact that they never expected to have any dealings that affect New Yorkers. But the same is not true of manufacturers of generic goods participating in a national industry and market * * *

*"Hymowitz* and the New York Civil Practice Law and Rules as well as legislative policy must thus be read as favoring a jurisdictional reach consistent with the national market share rationale and the adoption of several liability. A consonant interpretation of C.P.L.R. § 302 (a) (3) (ii) supports the conclusion that any manufacturer of DES, by its participation in the national marketing of a generic drug, should 'reasonably expect' its act of selling in the national market 'to have,' as C.P.L.R. 302 (a) (3) (ii) puts it, 'consequences in the state' ". *(In re DES Cases [Ashley v Abbott Labs.],* 789 F Supp 552, 571-572, *appeal dismissed* 7 F3d 20.)

Accordingly, the order of the Supreme Court, New York County (Ira Gammerman, J.), entered on or about May 4, 1993, which, insofar as appealed from, denied defendant-appellant Boyle & Co. Pharmaceuticals' motion to dismiss the complaints of plaintiffs Chernosky, Kluge and Vilasi for lack of personal jurisdiction, and order of the same court and Justice, entered on or about November 5, 1993, which deemed the above order to include the complaints of plaintiffs Carrano, Goldstein, Hooper, Shaffer and Steinberg, should be affirmed, without costs or disbursements.

ELLERIN, J. P., RUBIN, NARDELLI and WILLIAMS, JJ., concur.

Orders, Supreme Court, New York County, entered on or about May 4, 1993 and on or about November 5, 1993, respectively, affirmed, without costs or disbursements. [As amended by order entered Oct. 18, 1994.]